EMMA L. BOWEN, Administratrix of GEORGE A. BOWEN, *vs.* BALTIMORE AND PHILADELPHIA STEAMBOAT COMPANY, a corporation of the State of Maryland.

1. NEGLIGENCE—WHAT CONSTITUTES.

"Negligence" is the want of ordinary care, viz., such care as a reasonably prudent and careful person would exercise under similar circumstances. It is never presumed, but must be proved; and the burden of proving it rests on the party alleging it. It may arise from overt acts, or from the failure to perform a duty.

2. SHIPPING—OPERATION OF STEAMBOATS—DUTY TO PROVIDE SKILLFUL AND CAREFUL SERVANTS.

A company operating steamboats is bound to provide skillful and careful servants to navigate them, competent in every respect for the position to which they are assigned, and to see that they not only possess skill and capacity for the same, but that they apply those qualities when the occasion requires them, so that any negligence on their part will be the negligence of the company.

3. SHIPPING—OPERATION OF STEAMBOATS—"REASONABLE CARE".

"Reasonable care", when applied to the control and management of a steamboat in motion, embraces all the care which the particular circumstances of the place and occasion reasonably require, which will be increased or diminished according as the liability of danger and accident and injury to others is increased or diminished in the movement and management of the steamer.

4. SHIPPING—OPERATION OF STEAMBOAT—NEGLIGENCE.

In considering the question of negligence in the operation of a steamboat, at the time decedent was injured by a collision between the boat and a canal lock gate, it was proper for the jury to consider whether the captain was under the influence of liquor, at the time and if they found that he was so intoxicated as to make him incapable of observing all the care in the management of the boat which the particular circumstances of the place reasonably required, and the collision occurred because of the captain's intoxication, and his consequent impaired skill or lack of care, plaintiff was entitled to recover.

5. SHIPPING—TORTS—BURDEN OF PROOF.

Where a canal lock tender was injured by a collision between a steamboat and one of the lock gates, there was no presumption of negligence on defendant's part from the fact of the injury, but the burden was on plaintiff to establish actionable negligence.

6. SHIPPING — VESSEL — NEGLIGENT OPERATION — CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a canal lock tender by a collision between a steamboat and a lock gate, proof of contributory negligence on the part of the lock tender is a defense.

7. SHIPPING—NEGLIGENCE IN NAVIGATION—CONTRIBUTORY NEGLIGENCE—ACTS IN EMERGENCY.

The degree of care required by one to avoid injury being no greater than that which is required of all to avoid inflicting an injury, one brought suddenly into imminent danger is not required to exercise the same degree of care as if he had time for deliberation; and hence, where a canal lock tender was injured in a collision between a vessel and one of the gates, and it appeared that he was suddenly confronted with an emergency due to the negligence of defendant's servants in operating the vessel, and acted as a reasonably prudent man would act under like circumstances, and received the injuries complained of, he would not be guilty of contributory negligence.

8. SHIPPING—VESSELS—NEGLIGENT OPERATION—INJURY TO LOCK TENDER—CONTRIBUTORY NEGLIGENCE.

Where decedent, a lock tender, was injured in a collision between a vessel and one of the lock gates, by reason of the officers of the vessel trying

to navigate it through the lock before the gates were entirely open, but decedent was warned of the approach of the boat, and comprehended the warning, it was his duty to heed the warning, and if he failed to do so, and injury resulted, he would be guilty of contributory negligence, precluding recovery.

9. SHIPPING—NEGLIGENT NAVIGATION—INJURIES TO LOCK TENDER.

Where a lock tender gave a signal to defendant steamboat to enter the lock, and the boat, in consequence of the signal, approached at a proper rate of speed and in the proper manner, and the warning to back because the gates were not open was given too late to reverse, and in consequence thereof a collision occurred between the vessel and one of the gates, resulting in injury to another lock tender, such injury was caused by the negligence of the servants of the canal company, and not by the officers of the vessel.

10. SHIPPING—OPERATION OF VESSEL—NEGLIGENCE.

Where there was an understanding between defendant and a canal company, by which decedent was employed as a lock tender, to his knowledge, that steamboats of defendant company, in approaching the outer entrance to the lock, should give timely warning, and would not attempt to enter after having given the warning until the outer gates of the lock were open and the persons in charge of the lock had notified the officers of the steamer to enter the lock, and on the night of the accident defendant steamer gave warning of her intention to enter the lock, and attempted to enter it before the outer gates were open and before the persons in charge of the lock had notified it to enter, whereby she collided with one of the gates, resulting in injury to decedent, the owners of the steamer were liable for the injuries so caused.

11. DAMAGES—PERSONAL INJURIES—PROXIMATE CAUSE.

Where, in an action for injuries to a canal lock tender by a collision between defendant's vessel and one of the lock gates, it was shown that the lock tender died before trial of mitral stenosis, it was not necessary for plaintiff to prove that the death was caused by mitral stenosis occasioned by defendant's negligence; but it was sufficient to establish that the suffering, for which compensation was sought, resulted from the injuries inflicted by the defendant, though no recovery could be had if the suffering and death resulted from such disease acquired otherwise than by defendant's negligence.

12. DEATH—PERSONAL INJURIES—ELEMENTS OF DAMAGE—DEATH.

In an action for injuries to a canal lock tender, who died before trial, resulting from defendant's alleged negligence, the jury were entitled to consider, in determining plaintiff's damages, his loss of wages and such sum as he would have earned prior to his death, expenses for medicine and medical attendance which he paid, traveling expenses incident thereto, and his physical pain and mental suffering as the result of his injuries; but no compensation could be allowed by reason of his death.

(*October* 4, 1912.)

PENNEWILL, C. J., and WOOLLEY, J., sitting.

*T. Bayard Heisel* and *Richard S. Rodney* for plaintiff.

*Thomas F. Bayard* and *John Cadwalader, Jr.*, (of the Philadelphia bar) for defendant.

Superior Court, New Castle County, September Term, 1912.

Action for Damages (No. 163, September Term, 1911).

The action was originally brought by George A. Bowen, in his lifetime, to recover for personal injuries alleged to have been occasioned by negligence of the defendant's servants in so operating one of its steamboats, known as "Lord Baltimore", in approaching the locks of the Delaware and Cheapeake Canal at Delaware City on the night of December 23, 1910; that it collided with the lock gate which George A. Bowen, a locktender, was at the time opening, throwing him to the ground and producing the injuries complained of.   Before the case was tried George A. Bowen, the plaintiff, died, and Emma L. Bowen, his administratrix, was admitted party plaintiff to prosecute the suit.

The acts of negligence relied upon, and a statement of the facts appear in the charge of the court to the jury.

Woolley, J., charging the jury:

Gentlemen of the jury:—This is an action on the case, instituted by George A. Bowen in his lifetime, and prosecuted by Emma L. Bowen, his administratrix, since his decease, to recover damages for personal injuries alleged to have been inflicted upon him by the Baltimore and Philadelphia Steamboat Company, the defendant corporation.

In support of this action the plaintiff imputes to the defendant various acts of negligence, and charges in substance that at the time of the injuries complained of the defendant company was engaged in operating a steamboat line between the City of Philadelphia and the City of Baltimore by a route that required its boats to enter the locks and pass through the waterway of the Chesapeake and Delaware Canal Company; that on the night of the twenty-third of December, A. D. 1910, the Lord Baltimore, one of the steamboats admitted to have been operated by the defendant company, while en route from Philadelphia to Baltimore, appeared off the locks of the eastern terminus of the canal at Delaware City, and signaled its purpose to enter; that in response to that signal, George A. Bowen, the plaintiff's intestate, and William J. Wingate, the two locktenders then on duty, proceeded to make ready the locks for the steamer by opening the

gates at the end of the locks nearest the river.    It is testified that these gates are large wooden structures, six or seven tons in weight, extending when closed from one side of the locks to the other and from the bottom of the lock sills to a point above the locks; that they revolve on pivots and are held in place by yokes or collars and open and close like wings, being moved or propelled in one direction by pushing the booms attached to their upper structure in the opposite direction.

It is further testified that these two gates are opened and closed by two locktenders, each tender operating one gate, by placing the hollow of his back against the boom and pushing the boom with his back, by the aid of bracing himself against cleats upon a walkway over which the boom sweeps.

It is claimed by Bowen's administratrix that at the time Bowen was performing his duty as a locktender in opening the gate in his charge in the manner and for the purpose indicated, and before the gates were fully opened and the locks made ready, the steamer Lord Baltimore was seen by Wingate, the head locktender, to be approaching the locks under a dangerous headway, that Wingate called aloud to the steamer or to its pilot to "go back on her" and gave to the steamer or her pilot a warning of the impending danger in time sufficient to have averted the subsequent collision, had it been heeded.   It is further charged that in disregard of this warning and in violation of a rule adopted and long established by the canal and the defendant companies, to the effect that its steamers should approach the locks for the purpose of entering them only upon receiving from the locks a signal given upon a bell or by a call from the locktender, indicating the locks to be ready and the way clear, the Lord Baltimore continued on its course towards the locks which were visible in the clear winter night and struck the gate that was being operated by Bowen, with such force as to do him the injury for which he in his lifetime brought this action.

The acts of negligence specifically imputed to the defendant company are, first, that it so carelessly ran or operated the Lord Baltimore, or so carelessly omitted to use proper caution in its operation, that in endeavoring to effect an entrance into the

locks of the canal, the Lord Baltimore struck or collided with one of the gates of the locks, so that a part of the gate was violently knocked or pushed against the plaintiff's intestate, who, while pushing or moving the gate in the line of his duty as locktender and in the exercise of due care on his part, was injured either from the blow to the gate or by a fall caused by the blow; second, that the defendant company attempted to run the Lord Baltimore into the locks of the canal before the outer gates were opened and without the interchange of recognized signals governing the entrance of its steamers into the locks, whereby the collision occurred and injuries were sustained as alleged; and, third, that the defendant company carelessly allowed or permitted the Lord Baltimore to be navigated upon the occasion under consideration, by one of its servants while intoxicated or under the influence of liquor or other intoxicant, who was thereby rendered incompetent, inefficient and unfit for his duties, by reason of which the collision occurred and the injuries were inflicted as alleged.

To these specific charges of negligence the defendant replies that it is not guilty and for defense maintains, that the night of the twenty-third of December, 1910, was dark, that in descending the river and in approaching Delaware City the Lord Baltimore encountered ice and passed through rain, and that upon her arrival at Delaware City it was dark and misty; that pursuant to a code of signals established by the canal company and the defendant company, the captain blew three blasts of the whistle at the usual place about a quarter of a mile from the locks, slowed down; that upon approaching the locks and before the steamer had reached the V where steamers tie up when they are required to wait for admittance into the locks, a call was heard to "come ahead"; that this call was one of the customary and recognized signals to enter the locks; that the call was heard by the watch on the main deck, who transmitted it to the second in command on the saloon deck, who in turn repeated it to the captain in the pilot house; that the steamer responded to this call by one blast of the whistle and proceeded toward the locks at a slow rate of speed; that when a short distance from the locks, the gates were seen by one of the officers to be but partially opened, whereupon

the steamer was put full speed astern, and that a warning from Wingate "to go back on her" followed, but too late to avoid the collision. It is further contended that the captain, who was at the wheel and in command, was not intoxicated, that he was a competent and experienced navigator and upon the occasion in controversy committed no act of negligence.

[1] From this general statement of the case it appears that the issue, which against the motion of the defendant we deem proper to submit to you for your determination, is one of negligence. Negligence is a want of ordinary care; that is, such care as a reasonably prudent and careful person would exercise under similar circumstances. Negligence is never presumed. It must be proved and the burden of proving it rests upon the party alleging it. It may arise from overt acts or from the failure to perform a duty.

[2] It is the duty of companies operating steamboats, to provide skillful and careful servants to navigate their boats, competent in every respect for the posts to which they are appointed in their service, and it is their duty to see that their servants not only possess skill and a capacity for care, but to see that they apply these qualities when the occasion requires them. To this end and in this respect the law holds the employer responsible for its employee's negligence, as in this case the negligence of the captain or other officer or servant of the Lord Baltimore, if found, becomes the negligence of the defendant company.

[3] The care contemplated by the law in this regard is reasonable care, and reasonable care, when applied to the control and management of a steamboat in motion, imports all the care which the particular circumstances of the place and occasion reasonably require, and these will be increased or diminished according as the liability of danger and accident and injury to others is increased or diminished in the movement and management of such a steamboat. *Duggan v. N. J. & W. Ferry Co.*, 7 *Penn.* 318, 330, 76 *Atl.* 636.

[4] In considering whether or not the servants of the defendant in charge of the boat at the time of the accident used all the care which the particular circumstances of the place and occasion

reasonably required, it is competent for you to take into consideration the testimony as to whether or not its servant, the captain, was at the time under the influence of intoxicating liquor, or some other intoxicant; and if you find from the testimony that the captain or other officer in charge of the steamboat at the time of the accident was under the influence of intoxicating liquor, or some other intoxicant, so as to make him incapable of observing all the care in the management of the steamboat which the particular circumstances of the place and occasion reasonably required, and that the collision occurred and the injuries were inflicted because of such intoxication and the captain's consequent impaired skill or lack of care, the plaintiff will be entitled to recover.

It is for the jury to determine from the evidence whether the injuries complained of were the result of the collision, and, if so, whether the collision was due to negligence on the part of the defendant company in the movement and management of its steamboat at the time of the accident, without the fault or negligence of the plaintiff's decedent, or whether the injury resulted to the plaintiff's decedent by his own fault or negligence. The gist of this action being negligence, it is for you to determine who committed the negligence, if any, from which the injuries resulted.

[5] If the injuries to the decedent were not the result of the negligence of the defendant company or of its servant or servants, the plaintiff cannot recover. The burden of proving negligence is upon the plaintiff, and there is no presumption of negligence on the part of the defendant from the single fact that the decedent was injured by being struck as indicated.

[6] Even though the defendant company may have been negligent in operating its boat, yet, if negligence of the decedent contributed to and was the proximate cause of his injuries, your verdict should be for the defendant, as Bowen would be guilty of contributory negligence, and the law will not attempt in such case to measure the proportion of blame or negligence to be attributed to each party. *Lynch's Ex. v. W. C. Ry. Co.*, 7 *Penn.* 195, 78 *Atl.* 636.

[7] The degree of care and caution required of one to avoid being injured is at least no greater than that which is required of

all to avoid committing injury. It has been held by this court in *Simeone v. Lindsay*, 6 *Penn.* 224, 65 *Atl.* 778, and again in *Eaton v. W. C. Ry. Co.*, 1 *Boyce*, 441, 75 *Atl.* 369, "that a plaintiff will not be held guilty of contributory negligence who in the effort to avoid immediate danger, in the exigency of the moment, suddenly and without time for reflection, puts himself in the way of other perils without fault on his part; and particularly so if the defendant has placed him in such position. It is a well established rule of law that when one is required to act suddenly and in the face of imminent danger, he is not required to exercise the same degree of care as if he had time for deliberation and the full use of his judgment and reasoning faculties. And this is especially true when the peril has been caused by the fault of another."

If, in view of the circumstances surrounding the accident from which the injuries resulted, you believe that Bowen, in continuing to open the gate, acted as a reasonably prudent man would act under all those circumstances, and thereby received the injury complained of, he was not guilty of contributory negligence, and is not thereby prevented from recovering.

If you believe Bowen was confronted with an emergency, occasioned not by his act, but by the negligent act of the defendant's servants, and was called upon to act suddenly without time for deliberation or with but little time for reflection, he would not be required to exercise the same degree of care and caution as under ordinary circumstances. If, therefore, in this case, having regard to the entire situation, and the circumstances surrounding it, of which Bowen knew or of which Bowen could properly and reasonably be charged with knowledge, he acted as a reasonably prudent man would act under all like circumstances, and thereby received the injuries complained of, he cannot be held to have contributed to them and will not thereby be prevented from recovering.

The plaintiff must prove his case and show the injuries to have been caused in the manner declared by him in his pleadings. If you find that the defendant committed no acts of negligence that occasioned the injuries or if you find that the defendant was guilty of some negligence yet also find that the decedent by acts of negli-

gence of his own contributed to his injuries in such a way and to such an extent that his acts were the proximate cause of his injuries, as before charged you, your verdict should be not guilty. So, if you find the injuries of which the plaintiff complains were not inflicted "by the gate being violently pushed or knocked against Bowen" or "that Bowen was not hurled or thrown upon a footway," resulting in his injury, as declared in the narr., your verdict must be for the defendant, though it appear he was injured in some other way.

[8]   If you find that a warning was given by Wingate for the boat to go back or a warning of the approach of the boat was made by the single blast of the whistle, and that Bowen heard either of these warnings and understood and comprehended their import and meaning, it was Bowen's duty to heed them as a prudent man under like circumstances and with like knowledge would heed them, and if he failed so to do and injury resulted, he would be guilty of contributory negligence and cannot recover.

[9]   If the jury find that the locktender Wingate or some one else in authority on behalf of the Chesapeake and Delaware Canal Company did give the signal to the defendant's steamboat to come ahead and that the defendant's steamboat in consequence of that signal did come ahead at a proper rate of speed and in a proper manner and with proper caution, and that a warning given thereafter to go back because the gates were not open was given too late to reverse and that in consequence thereof the plaintiff's intestate was injured, the negligence, if any, would have been that of the Chesapeake and Delaware Canal Company, or of its servants, and not that of the defendant, and your verdict should be for the defendant.

[10]   If you believe that there was an understanding between the defendant and the Chesapeake and Delaware Canal Company, the employer of the plaintiff's decedent, which was known to him, to the effect that the steamboats of the defendant company in approaching the outer entrance to the lock, should give timely warning of such approach by sounding a steam whistle, and that the steamboat should not attempt to enter the lock after having given such warning until such warning had been acknowledged by

the sounding of a bell by the person in charge of the lock at the time, and if you further believe that the steamboat, Lord Baltimore, on the night of the accident, gave warning of its approach by sounding its steam whistle, and that no acknowledgment of such warning was made by the sounding of a bell by the person in charge of the lock at the time, and that, notwithstanding no acknowledgment was made in the manner agreed upon, the Lord Baltimore attempted to enter the lock and thereby collided with the gate of the lock, causing the injury complained of, the plaintiff would be entitled to recover; or if you believe there was an understanding between the defendant and the Chesapeake and Delaware Canal Company, the employer of the plaintiff's intestate, which was known to him, to the effect that the steamboats of the defendant company in approaching the outer entrance to the lock should give timely warning of such approach by sounding a steam whistle, and that the steamboat would not attempt to enter the lock, after having given such warning, until the outer gates of the lock were open and the person or persons in charge of the lock at the time of the approach of the steamboat had notified the person in charge of the steamboat to enter the lock; and if you further believe that the steamboat, Lord Baltimore, on the night of the accident, gave warning of its approach by sounding its steam whistle in the manner agreed upon, and then attempted to enter the lock before the outer gates were open and before the person or persons in charge of the lock at the time had notified the steamboat to enter the lock, and thereby collided with the gate, causing the injury complained of, the plaintiff would be entitled to recover.

[11] With respect to the injuries from which the decedent suffered, the important thing for you to determine is whether they were injuries inflicted by the defendant's servants. In this connection it is not necessary for the plaintiff to prove that Bowen's death was caused by mitral stenosis, occasioned by the defendant's negligence, it being sufficient for the plaintiff to prove that the suffering for which compensation is sought by this suit was from injuries inflicted by the defendant; but if you should find that Bowen's suffering and death were in fact entirely caused by the disease of mitral stenosis which disease was not caused by the

acts of negligence charged to the defendant, but contracted or acquired in some other way, then, of necessity, the plaintiff cannot recover.

[12]  If you become satisfied from the evidence that the injuries complained of by the plaintiff were occasioned by the negligence of the defendant company, or of its servants or agents, or any of them as declared, your verdict should be for the plaintiff, and you should assess the damages at such sum as you deem proper and right under the circumstances, and in fixing the amount thereof, you should consider such damages as have been proved by reason of loss of wages from the twenty-third day of December, A. D. 1910, to the fourth day of July, A. D. 1912, and such other sum or sums of money as would have been earned by the plaintiff's intestate during that time; all his expenses for medicine and medical attendance which he has paid, and traveling expenses incident thereto; and also such sum as you deem adequate and proper by reason of his physical pain and mental suffering, as the result of his injuries. *Quinn v. Johnson Forge Co.*, 9 *Houst.* 338, 347, 32 *Atl.* 858.

Should your verdict be for the plaintiff you cannot include compensation for Bowen's death in your assessment of damages. By force of the law and the nature of this action the decedent's administratrix cannot recover for his death. *Quinn v. Johnson Forge Co.*, 9 *Houst.* 338, 347, 32 *Atl.* 858.

Verdict for plaintiff.